**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SEAN R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV773 |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sean R., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, determining that Plaintiff's entitlement to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") ended on May 19, 2023. (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 7 at 1.)

## I. PROCEDURAL HISTORY

On March 6, 2013, Plaintiff applied for DIB and SSI, alleging a disability onset date of January 31, 2008. (See Tr. 17, 139.)[2] On July 16, 2013, the Social Security Administration ("SSA") notified Plaintiff that he qualified as disabled effective April 1, 2013. (Tr. 139-46.) Nearly ten years later, after conducting a Continuing Disability Review ("CDR"), the SSA sent Plaintiff a Notice of Disability Cessation advising him that, as a result of medical improvement in his condition, he stopped qualifying for DIB and SSI as of May 19, 2023. (Tr. 67-92, 148-56.) Following denials of Plaintiff's challenge to that determination at the reconsideration level (Tr. 93-118) and by a Disability Hearing Officer (Tr. 119-38, 170-97), Plaintiff sought a hearing before an ALJ (Tr. 198-200).

An ALJ held a hearing, at which Plaintiff (proceeding through counsel), Plaintiff's mother, and a VE testified. (Tr. 38-66.) The ALJ thereafter determined that Plaintiff's disability ended, due to medical improvement, as of May 19, 2023 (Tr. 14-36), and Plaintiff then requested review of the ALJ's decision with the Appeals Council (Tr. 271-72, 384-85). The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

[2] The record does not contain Plaintiff's applications for DIB and SSI.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. The most recent favorable medical decision finding that [Plaintiff] was disabled is the determination dated July 16, 2013. This most recent favorable medical decision is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, [Plaintiff] had the following medically determinable impairments: astrocytoma, status-post resection and multiple craniotomies. These impairments were found to meet [Listing] 13.13A of 20 CFR Part 404, Subpart P, Appendix 1.
>
> 3. Through the date of th[e ALJ's] decision, [Plaintiff] has not engaged in substantial gainful activity.
>
> 4. The medical evidence establishes that, since May 19, 2023, [Plaintiff] has had the following combination of medically determinable impairments: history of astrocytoma, status-post resection, and multiple craniotomies; headaches; depressive disorder; obesity; cannabis dependence; adjustment disorder with depressed mood; generalized anxiety disorder (GAD); neurocognitive disorder; hearing loss. These are [Plaintiff]'s current impairments.
>
> 5. Since May 19, 2023, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 6. Medical improvement occurred on May 19, 2023.
>
> . . .
>
> 7. The medical improvement is related to the ability to work because, by May 19, 2023, [Plaintiff]'s CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD.

. . .

8. Since May 19, 2023, [Plaintiff] has continued to have a severe impairment or combination of impairments.

9. Since May 19, 2023, based on the current impairments, [Plaintiff] has had the residual functional capacity to perform less than the full range of light work . . . with the following provisos: [he] can occasionally climb ladders, ropes, or scaffolds. He can occasionally balance. [He] must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. [He] must avoid concentrated exposure to noise, further defined to mean maximum noise rating of 3, which is moderate, according to the [Selected Characteristics of Occupations ('SCO")]. He must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation and the like. [He] can understand simple instructions and perform simple tasks. He can maintain concentration, persistence, and pace to stay on task for 2-hour periods over the course of a typical 8-hour workday with normal breaks in order to perform such tasks, in a low stress setting, which is further defined to mean no production-pace or quota-based work. [He] requires a goal-oriented job, primarily dealing with things instead of people with no more than occasional interaction with supervisors, co-workers, and the public as part of the job.

. . .

10. [Plaintiff] has no past relevant work.

. . .

14. Since May 19, 2023, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, [he] has been able to perform a significant number of jobs in the national economy.

. . .

15. [Plaintiff]'s disability ended on May 19, 2023, and [he] has not become disabled again since that date or through the date of th[e ALJ's] decision.

(Tr. 19-30 (bold font, internal parenthetical citations, and footnote omitted).)

## **II. DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### **A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the [SSA] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.

After a claimant qualifies for benefits under the Act, no presumption of continuing disability exists, see 42 U.S.C. § 423(f); rather, the decision to award benefits remains subject to a periodic CDR, 20 C.F.R. §§ 404.1589, 416.989. The SSA utilizes the prior determination granting benefits — the CPD — as a reference to evaluate whether any medical improvement has occurred relating to the claimant's ability to work. See 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994. To make this determination, the Commissioner employs a seven-step sequential evaluation process ("SEP"):

> 1) Do the claimant's impairments meet or medically equal the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1?

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

2) If not, has there been any medical improvement in the severity of the claimant's impairments?

3) If medical improvement has occurred, does such improvement relate to the claimant's ability to work?

4) If no medical improvement has occurred, does an exception apply?

5) If medical improvement relates to the claimant's ability to work, do the claimant's current impairments, singly or in combination, qualify as severe?

6) If severe impairments exist, does the claimant's RFC permit the performance of past relevant work?

7) If not, does the claimant have the RFC to perform other work existing in significant numbers in the national economy?

20 C.F.R. §§ 404.1594(b)(5), 416.994(b)(5).[4] If the Commissioner finds conclusively that a claimant qualifies as disabled at any point in this process, review does not proceed to the next step. See id.

**B. Assignment of Error**

In Plaintiff's first and only assignment of error, he asserts that "[t]he ALJ erred by failing to identify and explain the material inconsistency between his analysis of

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[neuropsychologist] Dr. [Maryanne] Edmundson's report and the RFC determination." (Docket Entry 11 at 5 (bold font and block formatting omitted).) More specifically, Plaintiff maintains that, although the ALJ found Dr. Edmundson's report "'generally consistent with other evidence of record[,]'" and stated that "'the issues [Dr. Edmundson] noted ha[d] been accommodated by the limitations' in the RFC" (id. at 6 (quoting Tr. 28)), "the ALJ included no limitations related to additional breaks or additional time off-task in the RFC" (id. (citing Tr. 22-23)), and "offered no explanation as to the omission of Dr. Edmundson's functional recommendations from the RFC" (id.).

According to Plaintiff, "[i]n *Ezzell v. Berryhill*, the [United States Court of Appeals for the] Fourth Circuit addressed such an issue where the ALJ gave a medical opinion 'significant weight' and then, without discussion, failed to include the limitations found in the medical opinion in the RFC[,]" and "reasoned that the ALJ's failure to include the limitations were implicit rejections of those portions of the medical opinion and the ALJ was required to explain his reasoning." (Id. at 7 (quoting Ezzell v. Berryhill, 688 F. App'x 199, 201 (4th Cir. 2017)); see also id. (quoting Rhodes v. Berryhill, No. 5:16CV674, 2017 WL 2303514, at *4 (E.D.N.C. May 10, 2017) (unpublished), recommendation adopted, 2017 WL 2303505 (E.D.N.C. May 25, 2017) (unpublished), for proposition that ALJ must "explain how he

resolved th[e] material inconsistency" between finding consultative examiner's opinion consistent with record and RFC's failure to incorporate examiner's opinion that the plaintiff could not ambulate effectively).) In Plaintiff's view, "[t]he addition of [Dr. Edmundson's] limitation regarding the ability to take additional breaks would have further reduced [Plaintiff]'s RFC and could be potentially disabling." (Id. at 9.) For the reasons discussed below, Plaintiff's contentions lack merit.

Under the regulations in effect at the time of Plaintiff's applications for DIB and SSI in 2013, an ALJ must explain "the weight [he or she] give[s] to any medical opinion" in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c) (versions eff. prior to Mar. 27, 2017). An ALJ must accord "controlling weight" to "treating sources," who can "provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)[,]" if the ALJ finds the treating source's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the ] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (versions eff. prior to Mar. 27, 2017). In contrast, one-time consultative examiners do not constitute treating sources under the regulations, see 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (versions eff. prior to Mar. 27, 2017), and, thus, their opinions, as a general proposition, do not warrant controlling

weight, see Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.).

An ALJ must nevertheless (A) evaluate consultative opinions using the factors outlined in the regulations, including "[s]upportability," i.e., the degree to which the examiner "presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings," 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (versions eff. prior to Mar. 27, 2017), "[c]onsistency," i.e., the degree to which the examiner's opinions harmonize with the rest of the record, see 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (versions eff. prior to Mar. 27, 2017), the area of "[s]pecialization" of the examiner, 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (versions eff. prior to Mar. 27, 2017), and "[o]ther factors . . which tend to support or contradict the medical opinion[,]" 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (versions eff. prior to Mar. 27, 2017), and (B) expressly indicate and explain the weight he or she affords to such opinions, see 20 C.F.R. §§ 404.1527(c), 416.927(c) (versions eff. prior to Mar. 27, 2017) (declaring that, "[r]egardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of

the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion").

The ALJ provided the following discussion of Dr. Edmundson's neuropsychological evaluation:

> Although not relevant to the period in question, [Plaintiff] underwent a neuropsychological evaluation on April 9, 2019, performed by [Dr.] Edmundson[ ], at the request of [Plaintiff's treating psychiatrist] Dr. [Meredith] Stanton due to concerns about cognitive impairment within the context of historical resected frontal brain tumor. Notably, [Plaintiff] had been assisting with the care of his grandmother, who had some acute medical and cognitive issues. According to Dr. Edmundson, [Plaintiff]'s cognitive profile indicated reduced sustained attention/vigilance and executive dysfunction (affecting memory performance). Combined with behavioral observation of flat affect and interview information suggesting post-surgical reduced initiation, apathy, obsessions, and variable emotion regulation, this profile was etiologically consistent with right frontal anaplastic astrocytoma, status-post nearly full right frontal lobectomy. Although some post-surgical/cancer sadness had been reported, difficulties with initiation and flat affect likely reflect apathy that was often seen with frontal lobe dysfunction. Of note, his performance was intact for several tasks that were typically affected by right frontal lobectomies (i.e., inhibition of automatic response, visual novel problem-solving, and self-directed organization of visual information). Recommendations were made by Dr. Edmundson to include everyday strategies for optimal functioning, medication consideration psychotherapy, and community-based resources.

(Tr. 25-26 (emphasis added) (internal parenthetical citation omitted).)

Later in the ALJ's decision, he provided the following analysis of Dr. Edmundson's report:

> The [ALJ] also considered the neuropsychological testing of Dr. Edmundson in 2019. She diagnosed cognitive changes secondary to right frontal tumor, status-post lobectomy, and apathy. While she described his profile, including reduced attention and vigilance, <u>she did not offer a functional assessment, per se</u>. She noted his performance was intact for several tasks that are typically affected by right frontal lobectomies, such as visual novel problem-solving. <u>Her report is generally consistent with other evidence of record, and the issues she noted have been accommodated by the limitations in the [RFC]</u> . . . .

(Tr. 28 (emphasis added) (internal parenthetical citation omitted) (position of dash altered).) For two reasons (discussed below), the ALJ did not err in his consideration of Dr. Edmundson's report.

First, as the language quoted above makes clear, the ALJ found Dr. Edmundson's report "<u>not relevant to the period in question</u>" (Tr. 25 (emphasis added)), and, thus, did not assign a weight to any opinions or findings in that report (<u>see</u> Tr. 28). Indeed, Dr. Edmundson issued her report in <u>April 2019</u> (<u>see</u> Tr. 662), during a period when Plaintiff qualified as <u>disabled</u>, and <u>over four years</u> before the SSA determined, on May 19, 2023, that medical improvement had occurred ending Plaintiff's entitlement to disability benefits (<u>see</u> Tr. 67-92, 148-56). Because the ALJ found Dr. Edmondson's report "not relevant" (Tr. 25), he labored under no obligation to accommodate Dr. Edmondson's opinions or

findings in the RFC, see Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (finding medical opinions that predate the relevant period "of limited relevance"); Dubose v. Kijakazi, No. 4:21CV3688, 2023 WL 1960997, at *5 (D.S.C. Feb. 13, 2023) (unpublished) (declining to find error in the ALJ's failure to address psychological examiner's statement, "because the statement predated the alleged onset date and was outside of the relevant period before the ALJ" (footnote omitted)); Smith v. Soc. Sec. Admin., No. 17CV2273, 2018 WL 2740007, at *3 (D. Md. May 9, 2018) (unpublished) (rejecting the plaintiff's argument that "the ALJ failed to acknowledge or assign weight to [a] neuropsychological evaluation and testing[,]" because the "evaluation . . . predate[d] the time period relevant to [the plaintiff]'s disability application by eight years"); Pierce v. Berryhill, No. 1:17CV579, 2018 WL 1940417, at *4 (M.D.N.C. Apr. 23, 2018) (unpublished) (finding no reversible error in ALJ's failure to consider treating physician records, because they "significantly predate[d] the relevant period in th[e] case"), recommendation adopted, 2018 WL 3549842 (M.D.N.C. June 12, 2018) (unpublished) (Osteen, J.).

Second, and more significantly, the ALJ correctly found that Dr. Edmondson "did not offer a functional assessment, per se." (Tr. 28 (emphasis added); see also Tr. 26 (noting that "[r]ecommendations were made by Dr. Edmundson to include everyday

strategies for optimal functioning" (emphasis added)).) In fact, Dr. Edmundson offered her statement that Plaintiff "tak[e] breaks as needed" as part of "personalized recommendations" and "everyday strategies for optimal functioning." (Tr. 669 (all-caps font omitted) (emphasis added); see also id. (containing other strategy recommendations such as "using a calendar," "using active listening," "participating in a regular exercise routine," and "engaging in mentally stimulating activities").) Such recommendations for lifestyle modifications do not constitute medical opinions under the regulations that ALJs must consider and weigh. See 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (versions eff. prior to Mar. 27, 2017) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [the plaintiff's] symptoms, diagnosis and prognosis, what [the plaintiff] can still do despite impairment(s), and [the plaintiff's] physical or mental restrictions." (emphasis added)).

In contrast, a recommendation that a patient undertake certain ameliorative measures to lessen symptoms and/or increase functionality does not equate to a physical restriction or a judgment about what that patient can still do despite his or her impairments. See Welch v. Colvin, 566 F. App'x 691, 693-94 (10th Cir. 2014) (finding that "none of the physicians [the plaintiff] identifie[d] provided medical opinions about her that, given her

impairments, the ALJ was required to weigh[, but r]ather, each physician simply diagnosed [the plaintiff's] impairments and in some cases recommended treatment for them"); Carmickle, 533 F.3d at 1165 (rejecting the plaintiff's "conten[tion] the ALJ erred in rejecting [a physician]'s recommendation that [the plaintiff] use a reclinable desk chair while working[,]" because "[the physician]'s proposal was offered as a recommendation, not an imperative" (internal quotation marks omitted)); Cruz v. Commissioner of Soc. Sec. Admin., No. 19CV4460, 2020 WL 3567033, at *2 (D. Ariz. July 1, 2020) (unpublished) (holding that ALJ had no obligation "to address [doctor's] statement as a medical opinion," because doctor "merely recommended that [the p]laintiff elevate her legs when sitting" and "did not state it was necessary for work" (internal quotation marks and brackets omitted)), aff'd sub nom., Cruz v. Kijakazi, No. 20-16651, 2021 WL 5357231 (9th Cir. Nov. 17, 2021) (unpublished); Valentine v. Commissioner of Soc. Sec. Admin., No. 1:18CV1887, 2019 WL 4395177, at *11 (N.D. Ohio July 23, 2019) (unpublished) (finding doctor's "recommend[ation] . . . that [the plaintiff] elevate his legs" failed to qualify as "medical opinion[] that [the plaintiff]'s varicose veins caused work-related functional limitations" (internal quotation marks omitted)), recommendation adopted, 2019 WL 4394168 (N.D. Ohio Sept. 13, 2019) (unpublished); Inscho v. Commissioner of Soc. Sec., No. 17CV114,

2018 WL 4184340, at *1 n.2 (W.D. Pa. Aug. 31, 2018) (unpublished) (deeming the plaintiff's "portray[al of consultative psychological examiner]'s observations as an opinion as to [the p]laintiff's work-related limitations [] simply inaccurate," because "the section of the evaluation labeled 'Recommendations,' the section that came closest to offering opinions, set forth actions and situations from which [the p]laintiff would benefit, not things that she could or could not do").

Furthermore, Plaintiff's reliance on Ezzell and Rhodes misses the mark. Neither of those cases involved statements from medical sources that significantly predated the relevant period, see Ezzell, 688 F. App'x at 200-01; see also Rhodes, 2017 WL 2303514, at *4, and neither case entailed recommendations and/or strategies for optimal functioning as opposed to medical opinions addressing a claimant's functional limitations, see Ezzell, 688 F. App'x at 200-01 (involving consultative medical examiner's opinions that the plaintiff could not "walk a block at a reasonable pace on a rough/uneven surface" and could not "climb a few steps at a reasonable pace with the use of a single hand rail," which the ALJ accorded "significant weight" (internal quotation marks omitted)); see also Rhodes, 2017 WL 2303514, at *4 (entailing consultative psychological examiner's opinion that "[the p]laintiff's immediate memory and delayed memory are

significantly impaired," which the ALJ afforded "moderate weight" (internal quotation marks omitted)).

In short, Plaintiff's sole assignment of error fails as a matter of law.

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 14, 2026